UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

JAMES J. SILVA :
:
v. : C.A. No. 04-170S
:
RHODE ISLAND FAMILY COURT, et. al. :
:
:

**REPORT AND RECOMMENDATION**

James J. Silva ("Petitioner") brought this action under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody. Petitioner claims, inter alia, that his due process rights were violated when he was determined to be in criminal contempt of the Rhode Island Family Court during the course of a divorce proceeding held in September 2003. The State of Rhode Island ("the State") moved to dismiss the Petition on the grounds of mootness, following Petitioner's June 10, 2004 release from his state sentence on the contempt conviction.

Pursuant to Rules 4 and 7 of the Rules Governing Section 2254 Cases in the United States District Courts, this Court issued an Order on December 20, 2004, requiring the State to provide the Court with briefing on several issues. The State filed its Memorandum of Law on January 11, 2005. Petitioner filed his response to the State's Memorandum on January 25, 2005. Presently, this matter is before the Court on Petitioner's Motion for Summary Judgment (Document No. 9) and the State's Motion to Dismiss (Document No. 7).[1] This matter was referred to me for preliminary review, findings and recommended disposition. 28 U.S.C. § 636(b)(1)(B); Local Rule of Court 32(c). The

[1] The Court incorporates the State's January 11, 2005 Memorandum of Law into the State's Motion to Dismiss, and the Court also incorporates Petitioner's January 25, 2005 Reply Memorandum of Law into Petitioner's Motion for Summary Judgment.

56

Court determined that no hearing was necessary. After reviewing the Memoranda submitted and conducting my own independent research, I recommend that the State's Motion to Dismiss be GRANTED, that Petitioner's Motion for Summary Judgment be DENIED, and that this matter be DISMISSED WITH PREJUDICE.

**Background Facts**

In 2003, Petitioner and his wife Barbara Cayer, were in the process of obtaining a divorce in the Rhode Island Family Court. At that time, Petitioner was incarcerated at the Rhode Island Adult Correctional Institution. Petitioner represented himself in the divorce case. At a hearing held on September 3, 2003, Petitioner was adjudged in criminal contempt of the Family Court because of certain statements he made in open court that day. This Court has reviewed the transcript of the September 3, 2003 proceeding, and without the benefit of observing Petitioner's demeanor and behavior that day, the Court now recounts those statements the Court considers relevant to the contempt inquiry.

Petitioner began the hearing by informing the court that his wife was "morally unfit" and an "adulteress." He also stated that he was in jail "illegally." See Transcript pp. 1-7; 10-11. Further, he insisted that the Family Court had tampered with transcripts of his previous court proceedings and claimed to be a victim of "corruption at the highest level." Id. at 9. Despite the court's apparent patience, it appears Petitioner continuously interrupted the court and made otherwise improper statements during the course of the proceedings. Id. at 11-13. The transcript also indicates that the court was unable to "finish a sentence" because of Petitioner's interruptions, and the proceeding, rather than focusing upon the merits of the divorce case, became a verbal sparring match between Petitioner and the court. Id. at 14. See also Tr. p. 7 ("The Court: "Let me finish a sentence"); p. 34

(The Court: "you're beating a dead horse"); p. 35 ("I already told you I wasn't going to rule on that today").

Petitioner told the judge, "[y]our records have no integrity....This Court has no integrity in its records....You're trying to get me at every disadvantage that you can; and I mean, this is ridiculous...." Id. at 15-16. He continued, "[y]ou're bending over backwards for this woman and you're doing everything you can to deprive me of my due process rights." Id. at 17-18.

Petitioner also claimed that his wife and certain police officers were conspiring against him. In particular he claimed one police officer was "trying to fix [Rhode Island Superior Court] Judge Rogerie Thompson." He stated, "[t]hey did the same thing that's being done to me here today; out of the clear, blue sky, she dragged me in the, the Courtroom and tried to railroad me....This is what I've been putting up with for 28 months, outright corruption, corruption, corruption...." Id. at 21-22.

After these initial exchanges, the court proceeded with the divorce case, and Petitioner's wife testified. Upon completion of her direct testimony, the court instructed Petitioner as to the proper boundaries for questioning the witness during cross-examination. Id. at 29-32. Despite the court's clear instructions, Petitioner continually posed inappropriate questions during the cross-examination. Id. at 34. Next, Petitioner's father-in-law took the stand to establish his daughter's residency in Rhode Island. Upon cross-examination as to residency only, Petitioner asked, "[a]nd she moved out when she got knocked up and she had an illegitimate child?" Id. at 38. Following this question, the judge found Petitioner to be in criminal contempt, and sentenced him to serve a term of five months for the conviction, concurrent to the sentence Petitioner was already serving at that time. Id. at 38.

Following his conviction for criminal contempt, Petitioner sought appellate review in the Rhode Island Supreme Court, which turned away his appeal in a December 19, 2003 Order. Then, on March 17, 2004, Petitioner's previous three-year criminal sentence was "flattened" and he was then serving a sentence only for the criminal contempt conviction. See State's Mem. of Law, p. 2.

On May 10, 2004, Petitioner filed the present Petition challenging his summary contempt conviction under 28 U.S.C. § 2254. On June 10, 2004, Petitioner was released from his criminal contempt sentence, and on June 14, 2004 the State moved to dismiss this matter on the ground that the case is moot.

This Court issued an Order on December 20, 2004 requiring the State to supplement its filings by addressing: (1) the mootness of Petitioner's claim; (2) the validity of Petitioner's amended habeas petition; (3) the merits of Petitioner's procedural due process claims; (4) the merits of Petitioner's substantive due process claims; (5) any opposition to Petitioner's Motion for Summary Judgment; and (6) any other relevant issues. The parties submitted substantive responses to the Order, and this Court will examine the relevant issues in turn.

## I. Whether This Case is Moot

The State contends that Petitioner's release from his sentence for the criminal contempt conviction moots this matter. In examining whether this case is moot, the Court considers two related, but distinct issues. First, the habeas corpus statute requires that a petitioner be "in custody," and second, Article III, Section 2 of the United States Constitution requires that there be a "live case or controversy" at all stages of a proceeding. A failure to satisfy either the "in custody" or the "live case or controversy" requirement is sufficient to warrant a dismissal of the case at any time.

**A. The "In Custody" Requirement**

The habeas statute, 28 U.S.C. § 2254, states that habeas relief may be granted "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." (Emphasis added). In the present case, although Petitioner is apparently still in custody, his continued incarceration is unrelated to his contempt conviction and sentence. Nevertheless, the custody determination is assessed at the time the petition for writ of habeas corpus is filed. See e.g., Carafas v. LaVallee, 391 U.S. 234, 238 (1968). In this case, Petitioner filed his habeas action in May 2004, and, at that time, he was in custody serving the sentence for his criminal contempt conviction. Therefore, as a threshold matter, Petitioner's release from state custody does not violate the "in custody" requirement of the habeas statute.

**B. The "Live Case or Controversy" Requirement**

Although the habeas corpus statute is not violated by the Court's continued jurisdiction over this matter, the Court must also determine whether the matter has become moot as a result of Petitioner's unconditional release from his sentence. Under Article III, Section 2 of the United States Constitution, this Court is limited to adjudicating cases constituting a live case or controversy. Lewis v. Continental Bank Corp., 494 U.S. 472, 477 (1990); See also United States v. Duclos, 382 F.3d 62, 65 (1st Cir. 2004) ("[the] 'case-or-controversy requirement' means that parties must continue to have a personal stake in the outcome through all the stages of judicial proceedings, trial and appellate. An appellant must have suffered, or be threatened with, an actual injury...") (internal citations omitted). In the present case, the State argues that because Petitioner has been released of

his sentence on the criminal contempt conviction, there is no live case or controversy, and the case should be dismissed.

Although an individual who has served his complete term of imprisonment does not face any future jail time, that factor alone does not automatically moot a habeas corpus action. Certain cases remain justiciable even after the individual's unconditional release, as a result of continuing adverse effects of the conviction, or "collateral consequences" of the conviction. See Duclos, 382 F.3d at 65-66 (collateral consequences "are considered redressable injuries satisfying the case-or-controversy requirement").

The existence of collateral consequences is presumed when petitioner challenges his conviction. See Spencer v. Kemna, 523 U.S. 1, 7-13 (1998) (discussing presumption of collateral consequences in criminal cases); Sibron v. New York, 392 U.S. 40, 55 (1968) (Court acknowledged "the obvious fact of life that most criminal convictions do in fact entail adverse collateral legal consequences. The mere 'possibility' that this will be the case is enough to preserve a criminal case from ending 'ignominiously in the limbo of mootness'") (citation omitted); Leitao v. Reno, 311 F.3d 453, 455 (1st Cir. 2002) (noting that a habeas petition is not considered moot when "the petitioner can show some sufficient collateral consequence of the underlying proceeding").

The Fourth Circuit Court of Appeals has described the justification for the presumption of collateral consequences as follows:

> [w]here the criminal conviction...results in the continued denial of important civil rights, such as the right-to-vote or the right to be considered for jury duty, the claim for habeas relief will remain a live controversy even after the prisoner has been released from custody. Similarly, where the criminal conviction may result in an enhanced

> sentence should the petitioner later be convicted of another crime, her stake in habeas relief permits the court to exercise its judicial function long after she has been freed.

Broughton v. North Carolina, 717 F.2d 147, 148-149 (4th Cir. 1983).

Although a presumption of collateral consequences exists, that presumption may be rebutted if there fails to be a showing of a concrete statutory disability flowing from the conviction being challenged. See, e.g., Spencer, 523 U.S. at 10-16. The State argues that courts in other jurisdictions have held that collateral consequences do not flow from a criminal contempt conviction. The United States District Court for the District of South Dakota stated, for example, that a contempt conviction:

> does not cause [Petitioner] the kinds of concrete disadvantages or disabilities that have been recognized as being sufficiently adverse collateral consequences to make [the] case justiciable, such as depriving [Petitioner] of the right to vote, hold office, serve on a jury or engage in certain businesses. In short, [Petitioner's] conviction, in contrast to a felony conviction, carries no collateral legal consequences that [Petitioner] will suffer from or otherwise be exposed to.

United States v. Hill, 171 F. Supp. 2d 1032, 1038 (D.S.D. 2001) (internal citation omitted); See also Malloy v. Purvis, 681 F.2d 736, 738 (11th Cir. 1982) (habeas corpus petitioner's unconditional release from state custody rendered petition moot where no consequences collateral to the conviction under attack would cause the petitioner to suffer the loss of any civil liberties not previously deprived of as a result of prior convictions).

On the other hand, however, the State candidly admits that this presumption is not universally overcome in the context of a criminal contempt conviction. See Dorman v. Brewington-Carr, No. 98-540 SLR, 2000 WL 52157, *1 (D. Del. January 7, 2000) (petitioner's five-month sentence for

criminal contempt had expired, but his habeas corpus application was not moot because court noted petitioner may suffer "collateral consequences" related to his conviction).

The State argues that Petitioner will suffer no collateral consequences of his conviction since he had a criminal record prior to his contempt conviction, and since his contempt conviction does not appear on his State Criminal History Record. The Court has reviewed those cases regarding contempt convictions and finds this to be a close case. On the one hand, in light of Petitioner's past criminal history and the various courts' holdings that collateral consequences must constitute legal harm, the Court is not certain that Petitioner would suffer cognizable collateral consequences of his conviction. However, the Court is also not convinced that Petitioner's prior criminal record and the fact that the contempt conviction does not appear on his criminal history are factors that sufficiently outweigh the collateral consequences presumption. Therefore, without making any specific finding, the Court simply concludes that it could envision Petitioner suffering collateral consequences flowing from his contempt conviction, and for that reason, the Court will favor the presumption set forth by the Supreme Court, and decline to find that this case is moot.

## II. Whether Petitioner's Amended Petition is Properly Before the Court

Petitioner filed his habeas corpus Petition on May 10, 2004 (Document No. 8) and subsequently filed a self-styled Amended Petition for Certiorari and Amended Petition for Habeas Corpus on May 24, 2004 (Document No. 6). Section 2242, 28 U.S.C., provides that a habeas corpus petition, "may be amended or supplemented as provided in the rules of procedure applicable to civil actions." The Federal Rules of Civil Procedure state that a pleading "may be amended once as a

matter of course..." with certain restrictions. Therefore, in viewing Petitioner's amended filing purely with respect to the timing, it would appear to be properly filed.

In habeas corpus cases, however, timing is not the only relevant factor, both form and procedure are equally important. Therefore, although the Amended Petition was filed in a timely fashion, it is otherwise improper. The original Petition was filed on the form mandated by the Federal Rules of Civil Procedure and the Local Rules of this Court, however, the Amended Petition did not follow the prescribed form. In fact, the Amended Petition is a typed memorandum, containing voluminous exhibits, which gives no clear indication of which aspects of the Petition were amended. The rules are clear that the proper form and procedure must be used. See D.R.I. Local R. 29; Rule 2, Rules Governing Section 2254 Cases ("[t]he petition must substantially follow either the form appended to these rules or a form prescribed by a local district-court rule"); Advisory Committee Notes to Rule 2 ("[a]dministrative convenience, of benefit to both the court and the petitioner, results from the use of a prescribed form").

In the present case, the fact that the petition may have been amended in a timely manner does not excuse Petitioner's failure to comply with rules regarding the method for amendment. Petitioner's subsequent filing is voluminous, unorganized, and, in short, is simply not a proper filing of a habeas corpus petition. For these reasons, the Court considers Petitioner's May 10, 2004 petition to be the properly-filed Petition, and the only Petition for consideration before this Court.[2]

[2] Although Petitioner's May 24, 2004 submission to this Court was not a proper filing for a habeas corpus petition, the Court has reviewed its contents and considered the facts and arguments set forth in that filing.

## III. The Merits of Petitioner's Procedural Due Process Claims

Petitioner claims his summary contempt adjudication was improper, but he also includes numerous other grounds for relief in his Petition. In an Order dated February 7, 2005 (Document No. 40), this Court rejected Petitioner's alternate grounds for relief which challenge procedural aspects of his Family Court divorce proceeding and have no relationship to the reason for the Family Court's criminal contempt finding. In that Order, this Court stated that:

> [h]abeas corpus relief is simply not available for Petitioner to challenge the underlying procedures utilized in his Family Court divorce proceeding which are not directly related to the challenged 'state custody.' See Donnelly v. Donnelly, 515 F.2d 129, 130 (1st Cir. 1975) (the Habeas Corpus Act, 28 U.S.C. § 2254 provides for relief against state 'custody' pursuant to a judgment of a state 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.') (emphasis added). "The long-standing policy of the federal courts [is] to avoid the interference in state domestic relations disputes – for example, by abstaining from asserting federal subject matter jurisdiction over domestic relations matters." Hemon v. Office of Pub. Guardian, 878 F.2d 13, 15 (1st Cir. 1989).

Order at 3.

On the basis of this previous Order, the only matter properly justiciable in this habeas Petition is Petitioner's constitutional claim that his due process rights were violated by his summary contempt conviction. Accordingly, the Court declines to consider the merits of Petitioner's procedural challenge to certain aspects of his Family Court divorce proceeding.

## IV. The Merits of Petitioner's Challenge to his Contempt Conviction

The actual substance of Petitioner's habeas corpus claim is that his constitutional due process rights were violated when he was convicted of criminal contempt without a jury trial. The law on summary criminal contempt convictions is well-developed.

In Rhode Island, the General Laws provide authority for the State District Court to impose a criminal contempt finding. See R.I. Gen. Laws § 8-8-5 ("[t]he district court may punish any contempt of its authority by fine or imprisonment or both"). Further, Rule 42(a) of the Rules of Criminal Procedure for the Rhode Island District Court provides, "*Summary Disposition.* A criminal contempt may be punished summarily if the judge certifies that he or she saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court."

Although the Rhode Island State District Court has the authority to hold an individual in criminal contempt in a summary disposition, in Rhode Island, as elsewhere, courts have held that a summary contempt adjudication is permissible only in specific circumstances. The Supreme Court has stated, for example, that only "petty, direct contempts in the presence of the court" are properly subject to summary adjudication. See Int'l Union, UMWA v. Bagwell, 512 U.S. 821, 832 (1994). Similarly, the Rhode Island Supreme Court has stated that "[s]ummary adjudication is permissible only if the conduct constituting the contempt is 'direct,' taking place fully in the presence of the court, and, further, 'immediate punishment is essential to prevent demoralization of the court's authority before the public.'" In re Carrie T., 516 A.2d 883, 885 (R.I. 1986); See also Noble v. Siwicki, 197 A.2d 298, 301 (R.I. 1964) ("to sustain the summary action to punish the alleged

contempt, it must be shown that the contempt in its nature was direct in its adverse effect upon the authority and prestige of the court"). See also Int'l Union, 512 U.S. at 831 ("[c]ourts independently must be vested with 'power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates, and...to preserve themselves and their officers from the approach and insults of pollution'") (citation omitted).

The Rhode Island court permits a summary conviction in these limited circumstances, since, "[a] court's business could not be conducted unless it could suppress disturbances within the courtroom by immediate punishment." Noble, 197 A.2d at 301. The Court elaborated upon the circumstances in which the due process requirements of criminal convictions are relaxed, and stated that only certain "narrowly limited" actions are appropriate for summary resolution and conviction. The court stated those limited circumstances include only "charges of misconduct, in open court, in the presence of the judge, which disturbs the court's business, where all of the essential elements of the misconduct are under the eye of the court, or actually observed by the court, and where immediate punishment is essential to prevent demoralization of the court's authority before the public." Id.

In this case, the Court finds that the summary contempt finding was squarely within the parameters set by Rhode Island courts. In open court, in the presence of the judge, Petitioner specifically challenged the court's authority and integrity and did not articulate any reasonable factual basis for these serious accusations. He stated, "[y]our records have no integrity...This Court has no integrity in its records...You're trying to get me at every disadvantage that you can; and I

mean, this is ridiculous..." Id. at 15-16. He also claimed the Court was biased towards his wife. "You're bending over backwards for this woman and you're doing everything you can to deprive me of my due process rights." Id. at 17-18. Further, he claimed the police and certain judges were conspiring against him, and that certain judges were being bribed. In particular, he claimed one police officer was "trying to fix [Rhode Island Superior Court] Judge Rogerie Thompson." He stated, "[t]hey did the same thing that's being done to me here today; out of the clear, blue sky, she dragged me in the, the Courtroom and tried to railroad me...This is what I've been putting up with for 28 months, outright corruption, corruption, corruption..." Id. at 21-22. These statements, claiming the court is corrupt, tampers with records and favors parties, clearly undermine the authority of the court and disrupt court business.

Further, Petitioner's statements were not in the course of a single outburst, instead, it is apparent that he continued to repeat his accusations throughout the course of the proceeding. Based on the Court's review of the transcript, the Court concludes that the Petition fails to state a constitutional violation. The Family Court judge that imposed Petitioner's sentence did so on the basis of repeated insults to the Court's integrity and after providing Petitioner with opportunities to compose himself and refrain from disruptive, insulting statements aimed at the court. Further, these statements took place fully in the presence of the court. Therefore, on the basis of the applicable Rhode Island General Laws and statutes, as well as case law developed and followed in this jurisdiction, Petitioner's summary criminal contempt conviction did not violate the "Constitution or laws or treaties of the United States" as required by 28 U.S.C. § 2254. For all these reasons, I recommend the Petition be DISMISSED WITH PREJUDICE.

**Conclusion**

For the foregoing reasons, I recommend that Petitioner's Motion for Summary Judgment (Document No. 9) be DENIED and the State's Motion to Dismiss (Document No. 7) be GRANTED, and that the Petition be DISMISSED WITH PREJUDICE. Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within ten (10) days of its receipt. See Fed. R. Civ. P. 72(b); D.R.I. Local R. 32. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

LINCOLN D. ALMOND
United States Magistrate Judge
May 6, 2005